**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **EMILIO TEMORES,** ) | |
| ) | |
| Plaintiff, ) | Case No. EDCV 09-1931 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| **MICHAEL J. ASTRUE,** ) | ` |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

    Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

    The procedural facts are undisputed. [JS 2]. Plaintiff filed his benefits applications on February 12, 2007. He alleged that he had been disabled since June 6, 2006, due to chronic low back pain, degenerative joint disease of the lumbar vertebrae, lumbar disc herniation, and sciatica. [JS 2]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found that plaintiff had lumbosacral strain that was severe, but that he retained the residual functional capacity ("RFC") to perform heavy work. [Administrative Record ("AR") 11-15]. The ALJ

1  found that plaintiff could perform his past relevant work as an agricultural picker and packer.[1] Therefore,
2  the ALJ concluded that plaintiff was not disabled. [AR 14-15].

### Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

### Discussion

**Need for a cane**

Plaintiff contends that the ALJ erroneously overlooked or ignored treating source evidence indicating that plaintiff needs to use a cane for support. [JS 3-8].

During the February 2009 hearing, plaintiff testified with the assistance of a Spanish-language interpreter. [AR 18-19, 24]. He said that he had been using a cane for two years, and that the cane was not prescribed by a doctor. [AR 23]. Plaintiff testified that he had back pain. He said that he took medication for pain, and then lay down for about two to three hours in the morning and afternoon. [AR 23]. Plaintiff testified that he currently was taking only over-the-counter Tylenol for pain, and that he sometimes used a heating pad. [AR 22-23]. He said that he had been prescribed pain medication, but that he stopped taking

---

[1] Plaintiff stated in a disability report that he worked from 1978 until April 2005 as an agricultural harvester. [AR 77]. Plaintiff's past relevant work was classified in a vocational analysis contained in the record as "Harvest Worker," Dictionary of Occupational Titles ("DOT") job number 403.687-014. [AR 82].

1    it because "they canceled the insurance for the clinic." [AR 22]. Plaintiff said that he had last seen a
2    physician for pain in April 2008. [AR 23]. He had been in prison for 13 months beginning in 2005 for
3    "smuggling marijuana." [AR 24]. Plaintiff said that he had been treated for a gastrointestinal infection in
4    prison, but not for back pain. Plaintiff testified that he no longer had abdominal pain, but he said that his
5    back pain had "increased. . . Because I think they did some kind of tests from up and down." [AR 24].

6         Plaintiff testified that he had no income and lived with a family friend, who supported him. [AR 26.
7    Plaintiff testified that during a normal day, he watched television, read, and "may go back and lie down for
8    a while." [AR 24-25]. He said that he had a driver's license and drove before he went to prison, but that
9    he could not renew the license because he could not see well with his current eyeglass prescription, which
10   dated from 2005. [AR 26]. Plaintiff said that he could lift five pounds, stand for 30 minutes before having
11   to sit, and sit for about two hours, provided he could stretch his leg. [AR 25]. Plaintiff testified that he did
12   not have any surgery or medical visits planned in the next six months. [AR 25].

13        Treatment reports in the record indicate that plaintiff presented to the McKee Clinic, an Arrowhead
14   Regional Medical Center ("ARMC") facility, on June 15, 2007. [AR 260, 262-263]. Plaintiff complained
15   of low back pain, and he reported a long history of severe low back pain secondary to lumbar herniated disk.
16   [AR 263]. The treatment note states that plaintiff "was previously seen in the Westside Clinic, and he's
17   unsure why he was transferred to McKee [Clinic]." [AR 263]. The record, however, does not contain
18   previous records from the Westside Clinic. The attending physician, Dr. Lanum, noted that plaintiff was
19   on Norco (hydrocodone bitartrate and acetaminophen), a narcotic analgesic, and Soma (carisoprodol), a
20   muscle relaxant and pain reliever, "for pain control," but that his pain was "only moderately controlled" on
21   those medications. [AR 263]. Dr. Lanum also wrote that plaintiff "walks w/cane." [AR 263]. Plaintiff's
22   Norco prescription was refilled, and a follow-up appointment was scheduled. [AR 262].

23        The next note is dated December 7, 2006, from the Westside Clinic, another ARMC facility. Spinal
24   x-rays dated December 1, 2006 also are included in the record. [AR 13, 242-245]. Plaintiff complained of
25   right-sided low back pain radiating to his right leg. He described the pain as "sharp" and "stabbing" and
26   rated it 8 on a 1-to-10 scale. Plaintiff reported taking Soma and Ultram (tramadol), a medication for chronic
27   pain, with "moderate relief." He said that he experienced pain with each step and when pressure was
28   applied to the right leg, and that the pain was most severe after long periods of sitting. [AR 243].

Under objective findings, the treating source (whose signature is illegible) noted that plaintiff walked with "a severe limp and needs a cane for support, unable to do straight leg raise of [right lower extremity].[2] [Plaintiff] is unable to forward flex at the waist [due to] severe pain. On palpation of the lumbar spine, felt bulging at T10-L1." [AR 243].

X-rays of plaintiff's sacrum/coccyx and lumbar spine taken on December 1, 2007 showed mild degenerative changes. [AR 244-245]. A renal ultrasound was within normal limits. [AR 246]. The assessment was arthritis of the lumbar spine. [AR 242].

Plaintiff had a follow-up visit at the Westside Clinic on December 13, 2006. [AR 240-241]. Subjectively, he complained that he could not walk without pain. He reported that right-side back pain traveled to his right leg, affecting his ability to walk. While sitting, he rated his pain as 3 out of 10. Plaintiff exhibited a reduced range of motion, in that he could not flex or rotate (but the affected parts are not identified). [AR 241]. It was noted that "disability filled out based on sciatica and [illegible]." [AR 240].

Plaintiff returned to the Westside Clinic on February 7, 2007, seeking a "statement for disability." [AR 239]. Plaintiff said that he was unable to work due to excessive pain. The assessment was sciatica, and a note was given. However, it does not appear that any examination was conducted during that visit. [AR 239].

In January 2008, plaintiff was evaluated at the McKee Clinic for complaints of low back pain. The assessment was chronic low back pain due to degenerative joint disease. His prescriptions for Ultram and Norco were refilled, and he was directed to return in three to six months "for continuity of care or earlier if needed." [AR 261].

In his decision, the ALJ said that plaintiff "affected" use of a cane, but that "there is no credible evidence establishing the need for any assistive device. No treating or examining physician has ever opined that [plaintiff] requires an assistive device to walk, and [plaintiff] acknowledged in his testimony that the cane was not prescribed by a physician." [AR 14]. The ALJ also noted that "[w]hile [plaintiff] went to the

---

[2] A positive straight leg raising test or positive Lasegue's sign is indicative of pain produced in the sciatic nerve distribution of the opposite leg, as with lumbar disc rupture on the same side as the pain. Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2004).

4

[Westside Clinic] in December 2006, he did so for the purpose of obtaining a statement supporting his claim for disability, rather than medical treatment. There is no evidence that a physical examination was conducted by attending physicians." [AR 13].

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). However, a treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Plaintiff contends that the ALJ impermissibly ignored the December 7, 2006 treatment report. [JS 3]. That contention has merit. The ALJ did not mention or discuss the ARMC treatment reports indicating that plaintiff had been diagnosed with, and treated for, spinal arthritis, sciatica, and degenerative joint disease between June 2007 and January 2008. The ALJ also failed to mention that two treating sources noted that plaintiff used a cane, bolstering plaintiff's testimony that he had chronic pain and had used a cane

for the past two years.[3] Furthermore, one of the treating sources made an objective finding that plaintiff has "a severe limp and needs a cane for support." [AR 243].

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case." SSR 96-9p, 1996 WL 374185, at *7. Thus, contrary to defendant's contention, the absence of a prescription for a cane is not dispositive. The ALJ erroneously disregarded "medical documentation establishing the need for" a cane for "support" due to a "severe limp." Cf. Verduzco v. Apfel, 188 F.3d 1087, 1088 (9th Cir. 1999) (holding that the ALJ did not err in rejecting the claimant's allegation that he needed a cane because: (1) "none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk"; (2) two doctors specifically noted that the claimant did not need such a device; and (3) when asked for his driver's license during the hearing, the claimant "stood up swiftly and took out his wallet from his rear pocket without effort and without apparent discomfort," despite walking slowly and using a cane during the hearing).

Defendant also contends that the ALJ justifiably disregarded the December 7, 2006 note because it is not clear that it was authored by a physician, and that the ALJ permissibly relied instead on the consultative orthopedist's opinion that plaintiff did not need a cane to ambulate.[4] [See AR 251]. The author of the two-page treatment note dated December 7, 2006 conducted a physical examination, reviewed x-rays, prescribed narcotic medication (Norco), and ordered a kidney ultrasound. [AR 243-244]. Next to "Provider Signature" is a signature or initials beginning with the letter "J," but otherwise not legible. Plaintiff subsequently underwent a kidney ultrasound that was ordered by James Evans, M.D. [AR 246]. Similarly, a few days prior to the December 7, 2006 examination, plaintiff underwent lumbar spine x-rays ordered by Dr. Evans. [AR 244-245]. It cannot be assumed that Dr. Evans signed the December 7, 2006 progress note,

---

[3] The Social Security Administration worker who interviewed plaintiff in connection with his benefits application also noted that plaintiff appeared to be in pain and walked with a cane. [AR 73].

[4] The consultative orthopedist, however, noted that plaintiff had a right-sided antalgic gait. [AR 248].

but it appears likely that he was the author. Moreover, there is no indication that the ALJ considered and rejected the findings in the December 7, 2006 note because the provider's signature was illegible. See generally Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). If that indeed was the case, the ALJ should first at least have attempted to clarify the identity of the author of that note by asking plaintiff about it during the hearing or taking other steps to develop the record. See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (stating that the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where "the claimant is represented by counsel")(quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

Defendant also argues that the statement about plaintiff's need for a cane is unreliable because it reflects a "mixture of testing and [p]laintiff's subjective complaints." [JS 2]. This reasoning was not articulated by the ALJ, and the negative inference is unwarranted. The author of the note described plaintiff's subjective complaints on a section of the examination note labeled "HPI," an abbreviation for "History of Present Illness," a term frequently used in examination reports. [Cf. AR 247]. See 1 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 5:10 (2010). This was followed by the hand-written letter "O," a commonly-used abbreviation for "Objective," a term used in medical notes using the "SOAP" (Subjective-Objective-Assessment-Plan) format. See 1 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 5:21 (2010). The terms "Assessment" and "Plan" appear on the other page of the note. [See AR 242]. The objective findings included the finding that plaintiff needed a cane for support, could not do a straight-leg raise on the right, and could not flex forward from the waist. [AR 243]. The inference that this finding merely parroted plaintiff's subjective complaints is contrary to the evidence.

Use of a medically-required hand-held assistive device is a nonexertional limitation that may significantly restrict a claimant's RFC and the occupational base, even if it not disabling per se. See, e.g., SSR 96-9p, 1996 WL 374185, at *7 ("[A]n individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or

to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.").

The potential significance of any need for a hand-held assistive device is magnified in this case because of other adverse factors in plaintiff's vocational profile. The DOT classifies plaintiff's past work as a "Harvest Worker" as unskilled and medium, but that work was heavy as actually performed because plaintiff had to lift up to 100 pounds. [AR 77]. Plaintiff has no other past work (and therefore has no skills that may be transferrable to other work). In addition, he was a person of "advanced age" (55-59 years old) on the date of the ALJ's decision, and he is now a person "closely approaching retirement age" (60-64 years old). See 20 C.F.R. §§ 404.1563(e), 416.963(e). The ALJ found that plaintiff can communicate in English, but he did not make a finding regarding plaintiff's education. Plaintiff's testimony and disability reports indicate that he attended school through the twelfth grade, though it is not clear whether or not he actually graduated. [AR 19, 80].

The Commissioner has concluded that being age 55 or older "significantly affects a person's ability to adjust to other work." 20 C.F.R. § 404.1563(e). A person of advanced age (ages 55 to 59) who is limited to light work or less and cannot perform his or her past relevant work must be found disabled unless that person is capable of performing alternative work that is either skilled or semi-skilled (not unskilled) *and* "less demanding" than his past relevant work. See 20 C.F.R. §§ 404.1563(e), 416.963(e); 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00(c)-(f), 202.00(c)-(f); see also Terry v. Sullivan, 903 F.2d 1272, 1275-1276 (9th Cir. 1990). For persons aged 60 to 64, there must be very little vocational adjustment involved in order to find skills that are transferable to light work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.00(e)-(f). In addition, a person who is between the ages of 60 and 64 is disabled unless that person has skills that are "highly marketable" in relation to the sedentary or light jobs he can otherwise perform. See 20 C.F.R. §§ 404.1563(d), 416.963(d); Terry, 903 F.2d at 1276. The adversity of educational and literacy deficits also is enhanced for persons over age 55. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00(c)-(d), 202.00(c)-

(d).

The ALJ found that plaintiff could perform heavy work despite his severe spinal impairment (and therefore could perform his past relevant work). If, however, plaintiff had a medical need for a cane that resulted in a limitation to less than the full range of medium work, a finding of disabled could be directed under the grid rules. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.04, 202.04. This possibility underscores the significance of the ALJ's failure carefully to consider and develop the evidence regarding plaintiff's use of, and need for, a cane.

Accordingly, the ALJ committed reversible legal error in failing adequately to discuss, and give reasons for rejecting, the treating source finding that plaintiff had a severe limp and needed a cane for support.

**Treating source diagnosis**

Plaintiff contends that the ALJ failed adequately to consider his treating source diagnosis of sciatica. [See JS 9-11].

A treating source diagnosis is an opinion regarding the "nature" of a claimant's impairments and is a component of a treating source's opinion. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)(defining medical opinions as statements from "acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions."); SSR 96-2p, 1996 WL 374188, at *2 ("It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion about what the individual can still do. Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not. Adjudicators must use judgment based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source.").

The diagnosis of a physical or mental impairment does not establish the impairment's severity. See Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed emotional disorder "is not per se disabling," and that "there must be proof of the impairment's disabling severity"). Nonetheless, the ALJ is not free simply to ignore treating source diagnoses in favor of a more

benign examining source diagnosis, as he did in this case. The ALJ did not acknowledge the existence of the treating source diagnoses of sciatica, arthritis of the low back, and back pain secondary to degenerative joint disease of the lumbar vertebrae. [AR 239-243, 261-262]. The only diagnosis he mentioned, and the one he adopted, was the consultative examiner's diagnosis of "lumbosacral strain." [AR 12, 15]. The ALJ did not mention plaintiff's ARMC records other than to say that plaintiff went to the Westside Clinic solely to obtain a disability statement, and that there was no evidence he was examined by attending physicians. [AR 13]. That characterization is misleadingly incomplete; the record demonstrates that plaintiff received ongoing treatment for a back disorder at two ARMC clinics. The ALJ's disregard of that evidence was error.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the following test to determine whether evidence should be credited and the case remanded for an award of benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen, 80 F.3d at 1292).

A remand for further administrative proceedings is the appropriate remedy because it is not clear from the record that the ALJ would be required to find plaintiff disabled if he fully and fairly developed the record and properly evaluated the evidence as a whole. On remand, the ALJ should give plaintiff the opportunity for a new hearing, obtain additional medical and vocational evidence as appropriate, and issue

a new hearing decision with appropriate findings.[5] See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (remanding for further administrative proceedings where several "outstanding issues" remain to be resolved, including "if she is disabled, the timing and duration of her disability," and whether, according to a vocational expert, there was alternative work the claimant could perform with all of the limitations supported by the record).

## Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

December 14, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[5] This disposition makes it unnecessary to consider separately plaintiff's additional contentions that: (1) the ALJ erred in failing to develop the record regarding his treating source disability opinions; and (2) the ALJ's finding that plaintiff retained the RFC to perform his past relevant work was not supported by substantial evidence. [See JS 11-21].